UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JAMES McKINNON | : | PRISONER<br>CIVIL NO. 3:02CV2317 (JCH) |
| v. | : |  |
| THOMAS HUNT, ET AL. | : | JANUARY      , 2004 |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

This case is a civil rights action by pro se Inmate James McKinnon of the MacDougall-Walker Correctional Institution, complaining about his cell assignment following his release from restrictive housing in December 2002 at the Garner Correctional Institution. The defendants are Unit Manager Thomas Hunt and Major John Lahda of the Connecticut Department of Correction. The defendants are sued in their official and individual capacities, and plaintiff seeks money damages and injunctive relief.

The defendants admit that Mr. McKinnon was not returned to G Unit following his release from restrictive housing. He was transferred to H Unit instead. However, his constitutional rights were not abridged, and we urge the Court to render Summary Judgment in favor of all defendants because:

1. The Eleventh Amendment bars this action against the defendants in their official capacities.

2. The State is not a "person" subject to liability under 42 U.S.C. § 1983.

3. Plaintiff's request for injunctive relief is moot.

4. Plaintiff has failed to exhaust his prison administrative remedies.

5.  Plaintiff cannot sue for constitutional violations allegedly suffered because he has not alleged or shown physical injury as required by the Prison Litigation Reform Act.

6.  Plaintiff has failed to state a claim upon which relief can be granted.

7.  The defendants are protected by their qualified immunity.

## FACTS

The plaintiff is an inmate of the Connecticut Department of Correction, MacDougall-Walker Correctional Institution in Suffield, Connecticut, currently serving a 13 year sentence for Robbery in the First Degree, Burglary in the Third Degree and Unlawful Restraint in the First Degree. Def. Statement, para. 1. The defendant, John Lahda, is employed by the Connecticut Department of Correction as a Major at the Garner Correctional Institution in Newtown, Connecticut. Def. Statement, para. 2. The defendant, Thomas Hunt, is employed by the Connecticut Department of Correction as a Unit Manager at the Webster Correctional Institution. At all times referenced in the Complaint, Mr. Hunt was the Unit Manager at the Garner Correctional Institution in charge of G and H Units. Def. Statement, para. 3.

At all times referenced in the plaintiff's complaint, and until he was transferred to the Cheshire Correctional Institution, plaintiff was classified as Mental Health 4 and was housed at the Garner Correctional Institution in Newtown, Connecticut in G Unit. Def. Statement, para. 4. The Garner Correctional Institution has two units reserved for inmates with this classification level: Unit G and Unit H. Inmates with this classification often have mental health issues requiring treatment and medication and have behaviors which would put themselves or others at

risk of injury if housed with general population inmates without such characteristics. Def. Statement, para. 6.

Assignments to these mental health units, as opposed to restrictive housing units, is in the discretion of the Warden and his custody staff, based on the professional judgment and assessments of mental health staff and the Classification Committee. No DOC directives or other written rules govern assignment to the mental health units, and there are no directives or rules providing for notice or hearing before transfer in or out of those units. Def. Statement, para. 7.

On November 4, 2002, plaintiff was transferred out of G Unit and into Restrictive Housing Unit F because he received a Disciplinary Report ("D.R.") for sexually assaulting an inmate in G Unit, based on the complaint of that other inmate. DOC Directives provide for notice and hearing in this instance and this process was provided to plaintiff pursuant to DOC Directive 9.4. Before any punitive sanction can be imposed on plaintiff, DOC directives also afford a notice and hearing process. This process was afforded plaintiff pursuant to DOC Directive 9.5. Def. Statement, paras. 8, 9.

Plaintiff was found not guilty on the D.R. Def. Statement, para. 10. On December 4, 2002, plaintiff was removed from restrictive housing and moved to H Unit. Plaintiff could not be returned to G Unit because, by this time, G Unit housed the inmate who had complained against plaintiff and another inmate with whom plaintiff had a fight. This information was reflected on plaintiff's "profile" screen, warning officers against housing these inmates together due to risk of future assault. Def. Statement, para. 11.

Plaintiff was placed in H Unit not to punish him, but in the interests of safety and security to protect him and other inmates and staff from harm or injury. Def. Statement, para. 12. G and H Units are physically constructed and laid out similarly to general population units at Garner. Def. Statement, para. 13. G and H Unit inmates are eligible for the same programs as inmates in general population. Housing in G or H Unit does not affect their parole eligibility or sentencing. Inmates in G and H Unit receive the same inmate handbook as general population inmates. Def. Statement, para. 14.

H Unit is used for Mental Health 4 inmates who have profiles which indicate that they must be separated from one or more inmates in G Unit, or elsewhere, due to risk of assault or altercation. Def. Statement, para. 15. To protect inmates in H Unit from risk of assault or attack, H Unit inmates must have personal escorts whenever they leave the unit. Also, more programs and work assignments are conducted in H Unit, except school. In this way, H Unit is different from G Unit. G Unit inmates are not under personal escort when they leave the unit and they attend more programs and work assignments outside the unit. The need for personal escort and extra precautions could be prescribed for any inmate at any time during his or her incarceration if necessary for security. Def. Statement, para. 16.

Plaintiff most likely remained in H unit until he transferred to Cheshire Correctional Institution on February 25, 2003, because all during that time he had a profile preventing him from being housed with those certain other inmates in G Unit. Def. Statement, para. 17. Assignment to H Unit is not a punishment. It gives greater protection and security for inmates who need it because of personal conflicts with other inmates in G Unit. Def. Statement, para. 18. Inmates in H Unit have more recreation time and more access to programs and more

4

opportunities for socializing with other inmates than inmates in restrictive housing. They have more privileges than inmates in protective custody status in other prisons. Def. Statement, para. 19.

In this time period, the Department of Correction had an administrative remedy available for inmates complaining about the conditions of their confinement, and plaintiff filed many grievances in this time period. However, none of his grievances covered the claims in this case. Also, plaintiff has not alleged or shown physical injury in this case. Def. Statement, paras. 20, 21.

## SUMMARY JUDGMENT STANDARDS

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." It has been held that summary judgment may be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and to which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 538 (1986); see also, Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 568-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When a motion for summary judgment is adequately supported by documentary exhibits, depositions, answers to interrogatories or further affidavits, it must be controverted by a similar response setting forth specific facts showing that there is a genuine issue for trial, absent which summary judgment shall be entered, if appropriate. Foster v. Turner Broadcasting, 844 F.2d 955, 959 (2nd Cir. 1988), cert. denied, 488 U.S. 994 (1988). In other words, there must be "sufficient

evidence favoring the non-moving party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby</u>, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party opposing summary judgment may not rely on conjecture or conclusory assertions that the other party is not telling the truth. See <u>Gottlieb v. County of Orange</u>, 84 F.3d. 511, 518 (2nd Cir. 1986). Summary judgment dispositions have been encouraged as a valuable means for avoiding unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use for that purpose. See <u>e.g.</u>, <u>Celotex</u>, <u>supra</u>; <u>H.L. Hayden Co. of N.Y. v. Siemens Medical Systems</u>, 879, F.2d 1005, 1011 (2nd Cir. 1989); <u>Knight v. U.S. Fire Ins. Co</u>., 804 F.2d 9, 12 (2nd Cir. (1986), <u>cert</u>. <u>denied</u>, 480 U.S. 932 (1987). It is particularly appropriate in cases under 42 U.S.C. § 1983 involving insubstantial claims such as this case. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 816, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

## **ARGUMENT**

**1.   The Eleventh Amendment Bars This Action Against The Defendants In Their Official Capacities**

It is now well established that a suit against a State official in his official capacity is, in actuality, a suit against the State. <u>Brandon v. Holt</u>, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); <u>Schiff v. Kerrigan</u>, 625 F.Supp. 704, 707 n.7 (D.Conn. 1986). The real party in interest is the State. <u>Kentucky v. Graham</u>, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). It is equally well settled that the doctrine of sovereign immunity embodied by the Eleventh Amendment precludes a suit for damages against a state and its agencies. <u>Edelman v. Jordan</u>, 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The Eleventh Amendment[1] is a constitutional limitation on the federal judicial power established in Article III, Section 2 of the United States Constitution in actions brought by a citizen against his own state.  Pennhurst State School & Hospital v. Halderman (Pennhurst II), 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2 67 (1984); Ex Parte State of New York No. 1, 256 U.S. 490, 491, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); Hans v. Louisiana, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890); Minotti v. Lensink, 798 F.2d 607, 609 (2nd Cir. 1986).  Of course, a sovereign's Eleventh Amendment immunity may be waived by an unequivocally expressed consent to suit.  Pennhurst, supra, at 99; see, e.g., Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Clark v. Barnard, 108 U.S. 436, 477 2 S.Ct. 878, 27 L.Ed. 780 (1893).  Consent means an explicit statutory provision granting permission to sue.  Florida Dep't. Of Health v. Florida Nursing Home Association, 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); see also, Duguay v. Hopkins, 191 Conn. 222, 227, 464 A.2d 45 (1983); Comba v. Ridgefield, 177 Conn. 268, 273, 413 A.2d 859 (1979).  In the instant case, plaintiff only complains about defendants' performance in their jobs.  The plaintiff did not, and cannot allege consent to suit.  Consequently, to the extent that this action is against all defendants in their official capacities, summary judgment should be rendered in defendants' favor.

---

[1]  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state.

Despite its limited language, it is well settled that this provision precludes federal court jurisdiction over suits brought against the state by its own citizens, absent consent.  Pennhurst State Schools & Hospital v. Halderman (Pennhurst II), 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Edelman v. Jordan, 415 U.S. 651, 673-74, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); see also, Red Star Towing & Transportation Co. v. State of Connecticut, 481 F.Supp. 1033, 1034 (D.Conn. 1976).

7

**2.     The State Is Not A "Person" Subject To Liability Under 42 U.S.C. § 1983**

42 U.S.C. § 1983 provides that, "Every <u>person</u>, who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory, subjects ... any citizen ... to the deprivation of any rights ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." (Emphasis added). The United States Supreme Court has refused, in view of the state's traditional sovereign immunity and the Eleventh Amendment, to construe the word "person" as including a State or its agencies. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); <u>see also</u> <u>Krozser v. New Haven</u>, 212 Conn. 415, 562 A.2d 1080 (1989), <u>cert. denied</u>, 493 U.S. 1036 (1990). Therefore, to the extent that this action is against the State through its officials, it is barred for this reason as well.

**3.     Plaintiff's Request For Injunctive Relief Is Moot**

An actual case or controversy must exist at every stage of the proceedings. U.S. Const. Art. III; <u>Preiser v. Newkirk</u>, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). Where a court can no longer grant the requested relief, the court must dismiss the case as moot. "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." <u>Martin-Trigona v. Shiff</u>, 702 F.2d 380, 386 (2nd Cir. 1983). In the case of an inmate confined in a correctional institution, the Second Circuit has held that an inmate's request for declaratory or injunctive relief becomes moot when the inmate is transferred from that institution or released from the custody of the Department of Correction. <u>See</u>, e.g., <u>Young v. Coughlin</u>, 866 F.2d 567, 568 n.1 (2nd Cir. 1989), <u>cert. denied</u>, 492 U.S. 909 (1989); <u>Mawhinney</u>

v. Henderson, 542 F.2d 1, 2 (2nd Cir. 1976); Phillips v. Ienuso, 1995 W.L. 237062 (S.D.N.Y. 1995).

The allegations in the complaint in this case concern incidents that allegedly occurred at the Garner Correctional Institution in 2002 and 2003. The plaintiff is no longer housed at Garner. Def. Statement, para. 1. Accordingly, the claims for declaratory and/or injunctive relief should be dismissed pursuant to 28 U.S.C. § 1915(c)(2)(B)(ii) (directing the Court to dismiss at any time a claim upon which relief may not be granted).

### 4.     Plaintiff Has Failed To Exhaust His Prison Administrative Remedies

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e, requires an inmate to exhaust his administrative remedies before bringing a § 1983 action with respect to prison conditions. Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Connecticut has such an administrative remedy in Department of Correction Administrative Directive § 9.6 (Inmate Grievances). See Directive, Exhibit H to Herbert Aff. The term "action ... with respect to prison conditions" is not defined in § 1997e. However, the term has been judicially determined to include claims of staff wrongdoing, Porter v. Nussle, 534 U.S. 516, 531, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) and, generally, any occurrences in prison life regardless of whether the claim involves general circumstances or particular episodes. Id. at 532.

The defendants have supplied the Court with all DR appeals and grievances found filed by plaintiff in the relevant time period. The only grievance which remotely touches on the events of this case is plaintiff's grievance No. 136-03-048 wherein he asked for the reason why he received a disciplinary report for sexual assault on November 4, 2002. Also, he was found

not guilty on the subject DR. See Grievances and Appeals, Exhibit I to Herbert Aff. These do not address the same issue in this lawsuit.

Accordingly, we urge the Court to render summary judgment in defendants' favor in this case for plaintiff's failure to exhaust administrative remedies, and to do so with prejudice, as in Berry v. Kerik, 345 F.3d 126 (2nd Cir. 2003).

### 5. **Plaintiff Cannot Sue For Constitutional Violations Alleged Suffered Because He Has Not Alleged Or Shown Physical Injury As Required By The Prison Litigation Reform Act**

Another requirement of the Prison Litigation Reform Act is the rule that "no Federal civil action may be brought by a prisoner … for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Under this limitation, courts have consistently held that section 1997e(e) bars prisoner civil rights suits seeking damages for constitutional violations where the inmate-plaintiff suffers only emotional or mental injury. Cox v. Malone, 199 F. Supp. 2d 135, 139 (S.D.N.Y. 2002) citing Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997) and Wright v. Miller, 973 F. Supp. 390 (S.D.N.Y. 1997). See also, Jenkins v. Haubert, 179 F.3d 19, 23 (2nd Cir. 1999). There is no statutory definition of "physical injury" as used in section 1997e(e). Liner v. Goord, 196 F.3d 132, 135 (2nd Cir. 1999). However, it has been held that the physical injury must be more than de minimus. Liner v. Goord, Id., citing Siglar v. Hightower, supra at 193.

In the instant case, plaintiff makes no claim or showing of physical injury. Consequently, summary judgment should enter in defendants' favor.

### 6. <u>**Plaintiff Has Failed To State A Claim Upon Which Relief Can Be Granted**</u>

It is true that Rule 8(a), F.R.Civ.P., broadly governs pleadings in Federal Court, and that notice pleading normally requires only a "short plain statement" of a claim for relief. See <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); <u>Batista v. Rodriguez</u>, 702 F.2d 393, 397 (2nd Cir. 1983). Also, it has been stated that, "Complaints relying on civil rights statutes are plainly insufficient unless they contain some specific allegation of fact indicating a deprivation of civil rights, rather than simple conclusions." <u>Koch v. Yunich</u>, 533 F.2d 80, 85 (2nd Cir. 1976); <u>see, e.g.</u>, <u>Powell v. Jervis</u>, 460 F.2d 551, 553 (2nd Cir. 1976); <u>Louis v. Ward</u>, 444 F.Supp. 1107, 1109 (S.D.N.Y. 1978); <u>see also</u>, <u>Branch v. Tunnell</u>, 14 F.3d 449 (9th Cir. 1994).

In the instant case, plaintiff states facts, but does not tie them to any constitutional rights. Plaintiff does allege that he was not allowed to return to G Unit as punishment. Assuming, arguendo, that this is an attempt to allege violation of his due process and/or Eighth Amendment rights, we nevertheless urge the Court to render summary judgment for the defendants on these issues for failure to state a claim upon which relief can be granted.

### <u>Due Process</u>

A claim alleging procedural due process violations must show that plaintiff enjoyed a protected liberty interest, and that defendants deprived him of that interest without due process of law. <u>Tellier v. Fields</u>, 230 F.3d 502, 511 (2nd Cir. 2000). The Due Process Clause does not protect against every change in the conditions of confinement of inmates, even if they have a substantial adverse impact. Rather, it protects against restraints or conditions of confinement

that exceed the sentence in an unexpected manner or are qualitatively different from punishment characteristically suffered by a person convicted of a crime and have stigmatizing consequences. Sandin v. Conner, 515 U.S. 472, 479 n. 4, 484, 115 S. Ct. 22393, 132 L.Ed.2d 418 (1995); Arce v. Walker, 139 F.3d 329, 333 (2nd Cir. 1998). A liberty interest may also be created by a state statute or regulation, but in those instances the inmate must establish that his confinement or restraint (1) creates an atypical and significant hardship in relation to the ordinary incidents of prison life and (2) the State has granted its inmates, by regulation or statute, a protected liberty interest in remaining free from that confinement or restraint. Arce v. Walker, supra at 334 citing Sandin v. Conner, supra at 484 and Frazier v. Coughlin, 81 F.3d 313, 317 (2nd Cir. 1996). Proper analysis requires consideration of the duration of confinement and severity of confinement compared to other categories of confinement. Taylor v. Rodriguez, 2001 U.S. App. LEXIS 668 (2nd Cir. 2001) at p. 9.

      The facts in this case show that the transfer of plaintiff to H Unit rather than G Unit did not affect his sentence or eligibility for parole, and it was a discretionary move not subject to any type of statutory or regulatory restrictions. Consequently, plaintiff cannot claim any liberty interests on these points. Nor was the severity of confinement of any significance. Assignment to H Unit is not different than assignment to G Unit or the general population at Garner other than the fact that plaintiff is required to be under personal escort when he leaves the unit, and that more programs are conducted in his unit. These proscriptions are imposed not for punishment, but for his own safety and security. Such safety and security steps are customary in prisons to protect inmates and, in this case, the precautions imposed limitations which are less severe than that found in restrictive housing or protective custody status. As such they cannot be

considered atypical or unexpected. Interestingly, this case represents the flipside of Conlon v. Howard, 215 F.3d 227 (D.Conn. 2000). In that case, plaintiff inmate complained that he was transferred from his mental health unit to 305 days in solitary confinement for 23 hours per day, permitted to exercise in the prison yard one hour per day, had two showers per week and denied various privileges available to the general population, such as opportunities to work and to go to out-of-cell school. Conlon v. Howard, Id. at 230. The Court found this to be atypical. In the instant case, plaintiff is not complaining about going from mental health housing to a restrictive housing unit. In a sense, he is complaining about the opposite. The opposite conclusion must follow.

Moreover, plaintiff's confinement in H Unit in this case was for 83 days. While 305 days in segregation was found in Conlon v. Howard to be atypical, 101 days in restrictive housing, was not atypical in Sealey v. Giltner, 197 F.3d 578, 589-90 (2nd Cir. 1999). Accordingly, plaintiff's facts do not show impact on a liberty interest requiring constitutional protection.

**Eighth Amendment**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" U.S. Const. Amend. VIII, and applies to states through the Due Process Clause of the Fourteenth Amendment. See Robinson v. California, 370 U.S. 660, 666-67, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). To prove a violation of the Eighth Amendment, an inmate must show (1) that the deprivation alleged is "objectively sufficiently serious" such that the plaintiff was denied "the minimal civilized measure of life's necessities" and (2) that the defendants officially possessed a "sufficiently culpable state of mind" associated with "the unnecessary and wanton infliction of pain." Trammell v. Keane, 338 F.3d 155, 162 (2nd Cir. 2003) citing Farmer v. Brennan, 511

U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Gaston v. Coughlin, 249 F.3d 156, 164 (2nd Cir. 2001). In prison condition cases, the state of mind requirement is one of deliberate indifference to inmate health or safety. Trammell, supra at 162. In the instant case, the facts clearly show that plaintiff was placed in H Block not due to indifference to inmate health or safety, but precisely to protect inmate health or safety.

Accordingly, summary judgment should enter in favor of the defendants in this case.

### 7. The Defendants Are Protected By Their Qualified Immunity

The defendants in this case, by virtue of their status as public officials who must be allowed to do their jobs in good faith without fear of being liable for damages each time they make a decision on behalf of the State, are clothed with qualified immunity in this case. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The Supreme Court has held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, supra, at 818. In order for the immunity to be available, the public official or employee must have acted under an objectively reasonable belief that his actions were lawful. Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); Eng v. Coughlin, 858 F.2d 889, 895 (2nd Cir. 1988).

While the issues of qualified immunity and privilege ordinarily involve issues of fact which need to be affirmatively pleaded, the Supreme Court has sanctioned the final resolution of civil rights cases on qualified immunity grounds on motion for summary judgment in appropriate cases. See Harlow v. Fitzgerald, supra; see also, Cartier v. Lussier, 955 F.2d 841 (2nd Cir.

1992); <u>Magnotti v. Kuntz</u>, 918 F.2d 364 (2nd Cir. 1990).  In the instant case, the Complaint shows no grounds upon which a constitutional claim can stand under the facts alleged.  <u>Schecter v. Comptroller, City of New York</u>, 79 F.3d 265 (2nd Cir. 1996); <u>Mozzochi v. Borden</u>, 959 F.2d 1174, 1178 (2nd Cir. 1992).  Even if the law was clearly established, under the circumstances alleged, the facts do not support the sufficiently culpable state of mind necessary to support liability.  Thus, the facts alleged demonstrate that it was objectively reasonable for the officials to believe that their actions did not violate those rights.  <u>Bliveira v. Mayer</u>, 23 F.3d 642, 648-49 (2nd Cir. 1994).  The plaintiff's allegations should not suffice to subject these governmental officials to the costs of trial.  <u>Harlow</u>, <u>supra</u>, at 817-18.  It follows then, that the public officials in this case should be shielded from any personal liability.  This case should, thus, be dismissed with prejudice.

      Should any portion of the Complaint survive the Motion for Summary Judgment currently under consideration, then we respectfully reserve the right to prove the defense at trial.

## **CONCLUSION**

For all of the foregoing reasons, we urge the Court to enter summary judgment for all defendants.

                                                DEFENDANTS
                                                Thomas Hunt, et al.

                                                RICHARD BLUMENTHAL
                                                ATTORNEY GENERAL

BY: _____
          Robert F. Vacchelli
          Assistant Attorney General
          110 Sherman Street
          Hartford, CT 06105
          Federal Bar #ct05222
          E-Mail: robert.vacchelli@po.state.ct.us
          Tel.: (860) 808-5450
          Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this ____ day of January, 2004:

James McKinnon, Inmate No. 100770
MacDougall-Walker Correctional Institution
1153 East Street South
Suffield, CT 06080

                                          _____
                                          Robert F. Vacchelli
                                          Assistant Attorney General