UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JAMES McKINNON | : | PRISONER<br>CIVIL NO. 3:02CV2317 (JCH) |
| v. | : |  |
| THOMAS HUNT, ET AL. | : | JANUARY      , 2004 |

### DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT

The defendants, Thomas Hunt, et al., by and through their undersigned counsel and pursuant to Local Rule 56(a)(1), Rules of the United States District Court for the District of Connecticut, submit the following statement of material facts as to which they contend there is no genuine issue to be tried.

1. The plaintiff is an inmate of the Connecticut Department of Correction, MacDougall-Walker Correctional Institution in Suffield, Connecticut, currently serving a 13 year sentence for Robbery in the First Degree, Burglary in the Third Degree and Unlawful Restraint in the First Degree. See Mittimus, Exhibit A; Movement Records, Exhibit F.

2. The defendant, John Lahda, is employed by the Connecticut Department of Correction as a Major at the Garner Correctional Institution in Newtown, Connecticut. Complaint, para. 2; Answer; Affidavit of Lahda, para. 1.

3. The defendant, Thomas Hunt, is employed by the Connecticut Department of Correction as a Unit Manager at the Webster Correctional Institution in Cheshire, Connecticut. At the times mentioned in the Complaint, he was a Unit Manager at the Garner Correctional Institution in charge of G Unit and H Unit. Complaint, para. 2; Answer; Affidavit of Hunt, paras. 1-3.

4. At all times referenced in the plaintiff's Complaint, and until he was transferred to the Cheshire Correctional Institution, plaintiff was classified as Mental Health 4 and was housed at the Garner Correctional Institution in Newtown, Connecticut, in G Unit. Affidavit of Lahda, paras. 3, 4.

5. The Garner Correctional Institution had two units reserved for inmates with this classification level, Unit G and Unit H. Affidavit of Lahda, para. 4.

6. Inmates with this classification often have mental health issues requiring treatment and medication and have behaviors which would put them or others at risk of injury if housed with general population inmates without such characteristics. Affidavit of Lahda, para. 4; Affidavit of Hunt, para. 3.

7. Assignment to these mental health units, as opposed to restrictive housing units, is in the discretion of the Warden and his custody staff, based on the professional assessments and judgments of mental health staff and the classification committee. No DOC Directives or other written rules govern assignment to the mental health units and there are no Directives or rules providing for notice or hearing before transfer in or out of those units. Affidavit of Lahda, para. 5.

8. On November 4, 2002 plaintiff was transferred out of G unit and into Restrictive Housing Unit F because he received a Disciplinary Report ("D.R.") for sexually assaulting an inmate in G Unit, based on the complaint of that other inmate. DOC Directives provide for notice and hearing in this instance, and this process was provided to plaintiff pursuant to DOC Directive 9.4, Exhibit C.

9. Before any punitive sanctions can be imposed on plaintiff, DOC Directives afford notice and hearing process. This process was afforded plaintiff pursuant to DOC Directive 9.5, Exhibit E.

10. At the D.R. Hearing, plaintiff was found not guilty as the complainant was found to be not credible and no staff had witnessed any such assault. See D.R., Exhibit D.

11. On December 4, 2002, plaintiff was removed from restrictive housing and moved to H Unit. Plaintiff could not be returned to G Unit because, by this time, G Unit housed the inmate who had complained against plaintiff and another inmate with whom plaintiff had a fight. This information was reflected on plaintiff's "profile" screen warning officers against housing these inmates together due to risk of future assault. Affidavit of Lahda, para. 10.

12. Plaintiff, on December 4, 2002, was placed in H Unit, the other unit for Mental Health 4 inmates, not to punish him, but in the interests of safety and security to protect him and other inmates and staff from harm or injury. Affidavit of Lahda, para. 10

13. G and H Unit are physically constructed and laid out similarly to general population units at Garner. Affidavit of Hunt, para. 5.

14. G and H Unit inmates are eligible for the same programs as inmates in general population, and they have the same amount of recreation time. Housing in G or H Unit does not affect their parole eligibility or sentencing. Inmates in G and H Unit receive the same inmate handbook as general population inmates. Affidavit of Hunt, para. 6.

15. H Unit is used for Mental Health 4 inmates who have profiles which indicate that they must be separated from one or more inmates in G Unit, or elsewhere, due to risk of assault or altercation. Affidavit of Hunt, para. 7.

16. To protect inmates in H Unit from risk of assault or attack, H Unit inmates must have personal escorts whenever they leave the Unit. Also, more programs and work assignments are conducted in H Unit, except school. In this way, H Unit is different from G Unit. G Unit inmates are not under personal escort when they leave the Unit, and they attend more programs and work assignments outside the Unit. The need for personal escort and extra precaution could be prescribed for any inmate at any time during his or her incarceration if necessary for security. Affidavit of Hunt, para. 8.

17. Plaintiff was housed in H Unit starting on December 4, 2002, and he most likely remained in that Unit until he was transferred to Cheshire Correctional Institution on February 25, 2003, during which time he had a profile preventing him from being housed with certain other inmates in G Unit. Affidavit of Hunt, para. 9; Affidavit of Lahda, para. 11.

18. Assignment to H Unit is not a punishment. It gives greater protection and security for inmates who need it because of personal conflicts with other inmates in G Unit. Affidavit of Hunt, para. 10.

19. Inmates in H Unit have more recreation time and more access to programs and more opportunities for socialization with other inmates than inmates in restrictive housing units. They have more privileges than inmates in protective custody status in other prisons. Affidavit of Hunt, para. 11.

20. The Department of Correction had an administrative remedy available for inmates complaining about the conditions of their confinement, and plaintiff filed numerous grievances in this time period. See Affidavit of Hebert. A review of those grievances shows that none of plaintiff's grievances specifically covered the claims in this case.

21. Plaintiff has not alleged or shown physical injury in this case.

                    DEFENDANTS
                    Thomas Hunt, et al.

                    RICHARD BLUMENTHAL
                    ATTORNEY GENERAL

BY:     _____
                    Robert F. Vacchelli
                    Assistant Attorney General
                    110 Sherman Street
                    Hartford, CT  06105
                    Federal Bar #ct05222
                    E-Mail:  robert.vacchelli@po.state.ct.us
                    Tel.: (860) 808-5450
                    Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this ____ day of January, 2004:

James McKinnon, Inmate No. 100770
MacDougall-Walker Correctional Institution
1153 East Street South
Suffield, CT  06080

                    _____
                    Robert F. Vacchelli
                    Assistant Attorney General